CHARLES E. HOAG *vs.* CHARLES H. ALDERMAN.

Hampden.    September 22, 1903. — October 20, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Partnership.    Contract.    Words,* "Expenses."

Although it is the rule that in the absence of an express agreement a partner is not entitled to compensation for services rendered in the business of the firm, yet the partnership may be of such a peculiar kind and the arrangement and course of dealing between the partners may be such that an agreement to pay for certain services of one of the partners may be inferred from the facts without an express agreement.

In a suit for an accounting by the defendant as a partner of the plaintiff in the purchase, management and sale of certain real estate, the defendant claimed an allowance of $500 as compensation for his services in the care and management of the property. It appeared, that the title to the property was taken in the name of the defendant and that in the receipt which he gave the plaintiff for the money contributed toward the purchase it was stated that the plaintiff was " to bear one third of the expenses in connection with said property ", that the defendant took charge of necessary repairs upon the property, buying the materials and superintending the work, and that he also collected the rents. There was a third partner who retired from the partnership, and it was agreed orally by him, the plaintiff and the defendant, that the defendant should receive $1,500 for his services in connection with the property, of which the retiring partner should pay $500 and the plaintiff $500. The retiring partner paid this $500 in his settlement with the defendant. The trial judge found that the defendant was entitled to be allowed $500 for his services as against the plaintiff. *Held,* that the oral agreement, although as a new undertaking it would have been without consideration, was important evidence of the original understanding of the three partners in regard to the meaning of the term "expenses" in relation to the services of the defendant in connection with the property, and that the facts warranted the finding of the judge.

KNOWLTON, C. J.    This is a bill in equity for an account from the defendant as a partner of the plaintiff in the purchase, management and sale of real estate. The only matter now in dispute is whether the defendant is entitled to an allowance of $500 which the plaintiff agreed to pay him for his services in the care and management of the property. A judge of the Superior Court heard and decided the case upon facts and evidence contained in a master's report, and the case comes before us upon exceptions taken by the plaintiff to his refusal to give certain rulings.

The judge ruled in accordance with the eleventh request, namely: " That if the defendant chose to do a service which at the time he meant to be gratuitous, or not at the express request of the plaintiff, he cannot recover for such services, even though they are beneficial to the plaintiff," and refused the sixth and tenth requests because they were inapplicable to the case, the sixth being that a mere moral obligation is not a sufficient consideration to support even an express promise, and the tenth that a past or executed consideration is not sufficient to create a liability. He also found " that the acts of the defendant done with the knowledge and consent of the plaintiff, and more or less beneficial to him, were tantamount to a request on his part that the defendant do what he did." He found that this sum should be allowed to the defendant.

The finding is, in substance, that the defendant's services were rendered under such circumstances as to create an implied contract on the part of the plaintiff to pay for them. If there was any evidence to warrant this finding, there was no error of law in the refusal to give the rulings requested. It is a familiar rule of law that in an ordinary partnership, in the absence of an express agreement, a partner is not entitled to compensation for services rendered in the business of the firm. This rule is of general application, and is applied with considerable strictness. *Dunlap* v. *Watson,* 124 Mass. 305. The reason for it is that, in what the partner does for the firm's business, he is presumed to be acting in his own interest, and in the absence of an express agreement to the contrary, it is ordinarily expected and implied that each member of the firm will devote himself to the promotion of the interests of the partnership without compensation. It follows that courts, in ordinary cases, will not make a comparison of services rendered by the several copartners for the purpose of determining their value, or whether either of the parties shall receive compensation. This rule is founded on the presumed intent of the copartners in entering into the contract of partnership. Of course, if there is an express agreement for compensation, the agreement is given effect. The partnership may be of such a peculiar kind, and the arrangements and the course of dealing of the partners in regard to it may be such, as pretty plainly to show an expectation and

understanding, without an express agreement upon the subject, that certain services of a copartner should be paid for. Such cases, presenting unusual conditions, are exceptions to the general rule above stated. *Bradford* v. *Kimberly*, 3 Johns. Ch. 431. *Caldwell* v. *Leiber*, 7 Paige, 483. *Emerson* v. *Durand*, 64 Wis. 111, 118. *Levi* v. *Karrick*, 13 Iowa, 344. *Lewis* v. *Moffett*, 11 Ill. 392, 399. *VanHousen* v. *Copeland*, 180 Ill. 74, 83. *Cramer* v. *Bachmann*, 68 Mo. 310. *Godfrey* v. *White*, 43 Mich. 171. *Lee* v. *Davis*, 70 Ind. 464, 469. See *Winchester* v. *Glazier*, 152 Mass. 316. The real question in each case is, What was the intention and the understanding of the parties, to be derived from their contract of copartnership. An express agreement in regard to compensation shows their intention. In the absence of an express agreement on that subject, the presumption that no compensation is to be allowed precludes compensation, unless the other agreements as to the business to be done and the mode of conducting it show that compensation for certain services was intended. If this intention is doubtful, the subsequent course of dealing and conduct of the parties may be considered in determining whether there is such an implication in favor of the allowance of compensation as is tantamount to an express agreement.

The same principle is applicable to the question whether, after the death of one of the partners, an allowance will be made for services of a surviving partner in closing and settling the business of the firm. While it is a rule that no allowance will be made in such cases, it is held in this Commonwealth, as well as elsewhere, that the circumstances may be so exceptional as to warrant giving compensation for personal services. *Robinson* v. *Simmons*, 146 Mass. 167. *Dewing* v. *Dewing*, 165 Mass. 230, 231. *Thayer* v. *Badger*, 171 Mass. 279.

In the present case the question is not whether the finding of the Superior Court in favor of the defendant was right as a finding of fact, but whether it was wrong in law. It is not a question as to the weight of the evidence, but whether there was any evidence in favor of the defendant. The report shows, in the first place, that the title was to be taken and held in the name of the defendant, whereby he had control of the property as holder of the legal title. Secondly, in the receipt which was

given by the defendant to the plaintiff for the money contributed towards the purchase, it was expressly stated " that the plaintiff was to bear one third of the expenses in connection with said property." There were six houses, and it was found that " nearly all of said property was out of repair, and immediately after said purchases, said parties commenced to make necessary repairs." These repairs were made with the knowledge, consent and approval of all parties, there being then a third joint owner with the plaintiff and defendant, one McKean, whose share has since been set off, so that he is not interested in this suit. " The defendant had charge of nearly all of these repairs, buying the material and superintending the work." He also collected the rents. These services were of a kind that, if rendered by another person procured by the defendant for the purpose, would have been paid for as a part of the expenses which the plaintiff, by the acceptance of the writing, had agreed to bear in his proper proportion. Afterwards when an adjustment was made by which McKean, the other joint owner, retired from the enterprise, it was orally agreed by him and the plaintiff and the defendant that the defendant should receive $1,500 for his services in connection with the property, of which McKean should pay $500 and the plaintiff should pay $500; and in the conveyance of a part of the property which was made to McKean, he assumed the payment of $500 upon an outstanding mortgage accordingly. While this agreement of the plaintiff to pay the defendant would not be binding upon him for want of consideration if the defendant previously had no claim that could be enforced, and if there was no other than a moral duty of reimbursement, see *Johnson* v. *Kimball,* 172 Mass. 398, yet the fact that the three parties agreed upon the payment is important evidence of their original understanding in regard to the meaning of the term " expenses," in relation to such services as the defendant rendered in connection with the property. The partnership was very different from one for the transaction of ordinary business, to which the members of the firm are expected to devote their time and attention. While the ordinary presumption is against the finding of the Superior Court in this case, and while there is important evidence against the defendant's contention, we are of opinion that

the facts stated in the report constitute evidence from which the judge might find as he did.

Exceptions overruled.

*C. E. Hoag*, pro se.

*C. Gowdy & J. McKean*, for the defendant.